FILED
2014 Mar-27  AM 09:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **BEN EUGENE HIGGINBOTHAM,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | **CASE NO. 2:13-CV-85-SLB** |
| **v.** | } | |
| | } | |
| **CAROLYN W. COLVIN,** | } | |
| **Acting Commissioner of Social** | } | |
| **Security Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Plaintiff Ben Eugene Higginbotham ("plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB"). Upon review of the record, the submissions of the parties, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## PROCEDURAL HISTORY

Plaintiff initially filed an application for a period of disability and DIB on January 13, 2010, alleging a disability onset date of October 15, 2009, (doc. 6-3 at 13; R. 12), due to "Schizophrenia," (doc. 6-7 at 31; R. 175).[1] After the Social Security Administration ("SSA")

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record. When the document cited is duplicated in the bound physical copy of the transcript of the entire record of the proceedings, the page number of that transcript is also included, ["Doc. ___; R ___."].

denied his application, he requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 25, 2011.  (Doc. 6-3 at 13; R. 12.)  After the hearing, the ALJ found that plaintiff did not have an impairment or a combination or impairments listed in, or medically equivalent to one listed in, the Listings of Impairments. (Doc. 6-3 at 16; R. 15); *see* 20 C.F.R. § 404.1520(d). The ALJ also found that plaintiff retained the residual functional capacity to perform work-related activities at all levels of exertion, with certain restrictions unrelated to exertion, (doc. 6-3 at 17-18; R. 16-17), and that he was "capable of performing [his] past relevant work as a janitor," (doc. 6-3 at 22; R. 21). The ALJ also made alternative findings and, with the help of a vocational expert ("VE"), concluded that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Doc. 6-3 at 24; R. 23.) In light of these findings, the ALJ found that plaintiff was not disabled from October 15, 2009 through the date of the decision, March 18, 2011, and denied his request for a period of disability and DIB. (*Id.*)

Plaintiff then requested the Appeals Council to review the ALJ's decision, but the Appeals Council found no reason under its rules to review the ALJ's decision, and denied his request for review. (Doc. 6-3 at 2; R. 1.) Therefore, the ALJ's decision is the final decision of the Commissioner. (*Id.*)

Following denial of review by the Appeals Council, plaintiff filed an appeal in this court. (Doc. 1.) He requests that this court reverse the Commissioner's decision or, in the alternative, remand the case for proper consideration of the evidence. (Doc. 7 at 3.)

## STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin*, 894 F.2d at 1529; *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted)

The court reviews the Commissioner's conclusions of law de novo. *Cornelius,* 936 F.2d at 1145. "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## DISCUSSION

### A.  THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability, SSI, and/or DIB. *See* 20 C.F.R. § 404.1520(a)(1)-(2); 20 C.F.R. § 416.920(a)(1)-(2); *Bowen v. City of New York,* 476 U.S. 467, 470 (1986). "[A]n individual shall be considered to be disabled for purposes of [determining eligibility for DIB/SSI] if [he] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see also* § 416(i)(1); § 423(d)(1)(A). The specific steps in the evaluation process are as follows:

### 1.  Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).[2] If the claimant

---

[2] 20 C.F.R. § 404.1572 and § 416.972 define "substantial gainful activity":
(a) *Substantial work activity*.  Substantial work activity is work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
(b) *Gainful work activity*.  Gainful work activity is work activity that you do for pay or profit.  Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.
(c) *Some other activities*.  Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

is engaged in substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience.  20 C.F.R. § 404.1520(b); § 416.920(b). "Under the first step, the claimant has the burden to show that he is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).

Although plaintiff worked part time during the alleged period of disability, the ALJ found that he did not engage in substantial gainful activity. (Doc. 6-3 at 15; R. 15); *see also* 20 C.F.R. § 404.1574(b)(2)-(3).

## 2.  Severe Impairments

If the claimant is not engaged in substantial gainful activity,  the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii), (c); § 416.920(a)(4)(ii), (c).  "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); § 1382c(a)(3)(D).  The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your age, education, and work experience." 20 C.F.R. § 404.1520(c); § 416.920(c).

"An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a); § 416.921(a). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 404.1523; § 416.923. A claimant has the burden to show that he has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff had a severe impairment of schizophrenia. (Doc. 6-3 at 15; R. 14.)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the duration requirement and whether it is equivalent to any one of the listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); § 404.1525; § 404.1526. Listed impairments are so severe that they prevent an individual from performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d); § 416.920(d).

The claimant has the burden of proving that his impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. (Doc. 6-3 at 16; R. 15.) The ALJ found that plaintiff had no marked restrictions and no episodes of decompensation of extended duration. (Doc. 6-3 at 17; R. 16.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that his impairment prevents him from performing his past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f); § 416.920(a)(4)(iv), (f). At step four, the Commissioner "will first compare [the Commission's] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1560(b); § 416.960(b). "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [him] to learn to do it." 20 C.F.R. § 404.1560(b)(1); § 416.960(b)(1). If the claimant is capable of performing his past relevant work, the Commissioner will find he is not disabled. 20 C.F.R. § 404.1560(b)(3); § 416.920(f). The claimant bears the burden of establishing that the impairment prevents him from performing past work. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff had the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels that does not involve concentrated exposure to extreme cold or hazardous machinery; can tolerate being around co-workers throughout the workday so long as only occasional conversation and interpersonal interaction is required; can understand, remember, and carry out instructions sufficiently to perform simple routine tasks; can maintain concentration, persistence, and pace for periods of up to two hours sufficiently to complete a routine workday with regular breaks; is able to tolerate work that is low stress (defined as involving infrequent, gradually introduced changes in the work setting), goal-oriented (rather than production-paced), deals with things rather than people, and requires only casual interaction with the public and occasional, nonconfrontational supervision; and would benefit from a well-spaced work environment and a flexible schedule.

(Doc. 6-3 at 17-18; R. 16-17.)

The ALJ found that plaintiff could perform his past relevant work as a janitor, in keeping with the vocational expert's testimony, and plaintiff's own testimony that he "probably could" still perform his previous job (as a janitor) with his former employer had he not been laid off. (Doc. 6-3 at 23; R. 22; *see also* doc. 6-3 at 66-67; R. 65-66.) Therefore, the ALJ found that plaintiff was not disabled. (Doc. 6-3 at 23-24; R. 22-23.)

**B. MR. HIGGINBOTHAM'S CLAIM**

Plaintiff's argument, distilled, is that the ALJ misallocated the weight given to the various medical opinions in this case. (*See* doc. 7 at 12.) The ALJ allegedly gave too much weight to the opinion of Dr. Samuel D. Williams, a non-examining consulting psychiatrist, (doc. 7 at 6; *see* doc. 6-8 at 67-84; R. 289-306), because Dr. Williams's assessment was in

conflict with the notes of the SSA's examining psychologist, Dr. Ruth Ann Lyman, (doc. 7 at 8-9; *see* doc. 6-8 at 85-90; R. 307-312). The ALJ allegedly erred in giving no weight to the January 31, 2011 RFC assessed by Dr. Armand Schachter, the physician who treated plaintiff during his five-day hospitalization in July 2010. (Doc. 7 at 10-11; *see* doc. 6-8 at 125-27; R. 347-349.) The ALJ apparently should not have given the June 10, 2010 RFC assessment of plaintiff's "treating primary care physician [PCP], Dr. [Thomas J.] Smitherman," much weight, since Dr. Smitherman is not a psychiatrist or psychologist. (Doc. 7 at 15; *see* doc.6-8 at 93-96; R. 315-318.) Finally, plaintiff's alternative argument is that the ALJ should have disregarded plaintiff's only Global Assessment of Functioning ("GAF") score above 51, the alleged threshold level for employability, since it was assessed "only after intense in-hospital treatment including therapy and medical management." (Doc. 7 at 15-16.) Instead, the ALJ should have recognized that the "real Ben Higginbotham . . . functions day to day with a GAF between 10"—the GAF assessed by Dr. Schachter on the day plaintiff checked into the hospital in July 2010 with hallucinations commanding him to hurt himself and others—"and 41"—the GAF assessed by Dr. Lyman. (Doc. 7 at 16; *see* doc. 6-8 at 109; R. 331; *and* doc.6-8 at 107; R. 329.)

There is no need to summarize all of the ALJ's factual findings here, but listing a few important facts will put the arguments in perspective. First, plaintiff has had schizophrenia since 1993. (Doc. 6-8 at 86; R. 308.) Second, plaintiff worked for a single employer for twenty-two years, as a janitor in the later years, until he was laid off in an apparent mass

reduction in force in October 2009. (Doc. 6-3 at 19; R. 18; *see* doc. 6-3 at 64-66; R. 63-65.) Third, plaintiff has maintained his pre-onset, eighteen-hours-a-week job returning grocery buggies from the parking lot to his employer's store. (Doc. 6-3 at 61, 64-66; R. 60, 63-65.) Fourth, plaintiff's stepmother, with whom he was close (he is not close with his biological mother, (doc. 6-8 at 86-87; R. 308-309)), died in July of 2009. (Doc. 6-3 at 16; R. 15; doc.6-8 at 14; R. 236.) Finally, in July of 2010, he checked into the hospital "with command hallucinations wanting to hurt himself and other people." (Doc. 6-8 at 107; R. 329.) His GAF was assessed at 10. (*Id*.) Plaintiff later explained the event thus: "My medicine has to be regulated. It lost its effectiveness, and I was . . . driving that day . . . and I was kind of nervous. . . . So I asked to be put in the hospital."[3] (Doc. 6-3 at 72-73; R. 71-72.) Dr. Schachter, the physician treating him in the hospital, found that after five days he had "responded well to inpatient structure and tolerated medication to a point where he was ready to be discharged," assessing a GAF of 90. (Doc. 6-8 at 105; R. 327.)

### 1. Conflicting RFCs

Plaintiff makes much of the fact that Dr. Williams's opinions, expressed in part in his RFC assigning only insignificant and moderate limitations, are necessarily limited by the fact that Dr. Williams was not an examining physician. But the ALJ does not even specifically mention Dr. Williams or his RFC; the whole of the ALJ's consideration of evidence from Dr. Williams is one sentence: "Considerable weight is also afforded the opinions of the State

---

[3]Ellipses are used only to avoid repetition.

agency psychiatric consultant as reflected at Exhibits 3F and 4F[, (doc. 6-8 at 67-84; R. 289-306,] as those opinions are consistent with the record as it stood at the time." (Doc. 6-3 at 22; R. 21.) It is true that Dr. Williams's RFC is very similar to the one the ALJ ultimately assigned plaintiff, but, as the discussion below will show, this is not a result of the ALJ rubber stamping Dr. Williams's opinion. The ALJ's proper findings on the evidence from the other sources would have allowed him to reach the same conclusion even without Dr. Williams's opinion.

The ALJ focused instead on evidence from the examining sources. Plaintiff characterizes Dr. Lyman's evaluation as "indicat[ing] that the plaintiff's schizophrenia is not well controlled and that the plaintiff would experience significant adverse vocational limitations as a consequence." (Doc. 7 at 11.) The court doubts the appropriateness of that characterization. Dr. Lyman found plaintiff's impairments to be "moderate to serious," but she does note that plaintiff's "symptoms of schizophrenia appear relatively well managed by medication, in that he no longer experiences hallucinations." (Doc. 6-8 at 89; R. 311.) Although the ALJ explicitly only afforded Dr. Lyman's opinions "limited weight," the ALJ wrote extensively about her opinions, and apparently the ALJ's only problem was with her assignment of a GAF of 41. (Doc. 6-3 at 21; R. 20.) The ALJ properly concluded that such a low GAF—one that would, *if maintained*, presumably preclude "all work"—was inconsistent with Dr. Lyman's own observation that plaintiff "appears capable of functioning in certain low-skill positions and certain work settings, based on his current part-

time work . . . ." (Doc. 6-3 at 20; R. 20; doc. 6-8 at 89; R. 311.) Other than that, however, it appears that the ALJ took Dr. Lyman's opinion for what it was: a snapshot of plaintiff's condition on April 2, 2010, the date she examined him. (Doc. 6-8 at 86; R. 308.)

The ALJ properly rejected the RFC of Dr. Schachter, which assigns plaintiff marked limitations across the board. (Doc. 6-3 at 22; R.21; doc. 6-8 at 125-27; R. 347-49.) As the ALJ recognized, this RFC does not square with Dr. Schachter's singular experience with plaintiff, when plaintiff went from a very bad condition to an apparently good one during his five-day stay at the hospital. There was no evidence that Dr. Schachter had seen plaintiff since Dr. Schachter discharged him with a GAF of 90 and good notes on his condition. Therefore, the ALJ properly viewed the RFC that Dr. Schachter assigned seven months later as an anomaly.

The ALJ was fully within his discretion to rely more heavily on the notes and RFC of plaintiff's treating physician, who had treated him since 2002. (Doc. 6-3 at 21; R. 20.) In that RFC, Dr. Smitherman gave plaintiff no more than moderate limitations. (Doc. 6-8 at 94-96; R. 316-18.) Plaintiff has two problems with reliance on that evidence: Dr. Smitherman is not a psychiatrist or psychologist, and Dr. Smitherman did not explain why the restrictions he gave plaintiff "are so minimal at that time." (Doc. 7 at 15.) These problems are easily resolved. First, the regulations and policy interpretations of the SSA do not make plaintiff's proposed distinction between primary care physicians and psychiatrists or psychologists. Instead, they distinguish between treating physicians and other sources, stating that

12

"longitudinal records showing regular contact with a treating source are the most desirable," SSR 96-7p, and that "[g]enerally, we give more weight to opinions from your treating sources," 20 C.F.R. § 404.1527(c)(2). The reason for this preference resolves plaintiff's second problem, and, to a large extent, his case. The obvious explanation for a treating physician's opinion is his or her experience with the claimant, evidenced by treatment notes. This experience is why treating sources

> are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, *such as consultative examinations or brief hospitalizations*.

20 C.F.R. § 404.1527(c)(2) (emphasis added). The ALJ did not err by assigning significant weight to evidence from Dr. Smitherman, a source able to present a longitudinal picture of plaintiff's schizophrenia.

### 2. Range of GAF Scores

Plaintiff argues in the alternative that his two low GAF scores of 10 and 41 "establish[] that he is disabled . . . ." (Doc. 7 at 16.) Plaintiff cites no source suggesting that one or two GAF scores can, without more, establish disability. Defendant cites a number of cases suggesting that GAF scores are not meant to carry so much weight. (*See* doc. 8 at 18-19.) The court agrees with defendant. *See Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) ("We note . . . [that] the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores

have no 'direct correlation to the severity requirements of the mental disorders listings.'") (quoting 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)). The ALJ properly put the GAF scores assigned to plaintiff in context, using them as a guide in interpreting a particular medical source's opinion of plaintiff's condition at the time assessed.

## CONCLUSION

Based on the record as a whole, the court finds that substantial evidence supports the ALJ's determination that plaintiff is capable of performing his past relevant work as a janitor. Therefore, the decision of the Commissioner denying plaintiff's claim for a period of disability and DIB is due to be affirmed. An Order in accordance will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 27th day of March, 2014.

SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE